# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny,          :
           Petitioner      :
                          :
       v.                :   No. 1722 C.D. 2017
                          :   Submitted: April 13, 2018
                          :
Workers' Compensation Appeal    :
Board (Bonenberger),          :
           Respondent    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**          **FILED: May 14, 2018**

The County of Allegheny (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board), which affirmed a Workers' Compensation Judge's (WCJ) decision that granted Marguerite Bonenberger's (Claimant) review petition seeking to correct the description of her work injury and denied Employer's termination petition. Employer asserts the WCJ's credibility determinations are arbitrary and capricious and are based on the WCJ's misapprehension of material facts. It also argues the WCJ erred in ignoring or rejecting medical evidence that Claimant fully recovered from her recognized work injury. Upon review, we affirm.

## I. Background

Claimant works for Employer as a correctional officer at the Allegheny County Jail. She sustained four work injuries during the course of her employment.

Relevant here, in August 2012, Claimant sustained a right knee injury when an inmate and two coworkers fell on her during a confrontation. Employer issued a Notice of Temporary Compensation Payable (NTCP) describing the injury as a right knee contusion. The parties subsequently entered into a supplemental agreement describing the August 2012 injury as a right knee medial meniscal tear. The parties also entered into a supplemental agreement, which indicated that Claimant returned to work with no loss of wages in October 2012; as a result, her indemnity benefits were suspended as of that date.

Claimant again received indemnity benefits for her August 2012 work injury in late 2012. Her indemnity benefits were suspended when she returned to work with no wage loss in June 2013. Claimant again received indemnity benefits at some point after June 2013. Thereafter, Employer issued a notification of suspension stating Claimant's indemnity benefits were suspended as of October 2013 based on her return to work with no wage loss.

In January 2014, Claimant filed a review petition alleging the description of her August 2012 work injury was incorrect and should also include "right hip, right side pain, low back pain, and left knee." WCJ's Op., 9/12/16, at 4; Reproduced Record (R.R.) at 1. Employer denied the material allegations.

A few weeks later, Employer filed a termination petition alleging Claimant fully recovered from her August 2012 work injury as of August 2013. Hearings ensued before a WCJ.

After an initial decision by a WCJ denying Claimant's review petition and granting Employer's termination petition after Claimant did not appear at a WCJ hearing, Claimant appealed to the Board. Ultimately, the Board remanded to the WCJ to reopen the record.[1]

On remand, a different WCJ made the following findings. Claimant testified that in August 2012, she sustained a medial meniscal tear to her right knee. She underwent surgery in April 2013. Claimant noticed problems with her right hip a few days after the injury. Claimant explained that the injury occurred when she attempted to restrain an arrestee. In the process, Claimant fell with her right leg extended and landed on her right buttocks. At that point, three adult males fell on Claimant. Claimant initially received treatment at a hospital. Thereafter, she received treatment from Drs. Robert Weiss and David Hartmann. Claimant testified she complained to these physicians about her right hip and groin, and she was referred to physical therapy. Claimant further explained that, after her knee surgery, she returned to light duty work until March 2014, when she was suspended for reasons unrelated to the work injury. Claimant returned to her full duty job in April 2014.

Claimant also testified that, after her knee surgery, she experienced continuing pain in her hip with pain radiating into her groin and right thigh. She also complained of lower back spasms. Claimant treated with Dr. Scott K.

---

[1] More particularly, the Board remanded because the record revealed Claimant was admitted to a rehabilitation facility at the time of the WCJ hearing, her prior counsel withdrew from the case, and Claimant notified Employer and the WCJ of this situation. Thus, the Board ordered the WCJ to reopen the record to allow Claimant to present evidence in support of her review petition and in opposition to Employer's termination petition. The Board also provided Employer an opportunity to present additional evidence.

Schweizer (Claimant's Physician) for problems associated with her right hip, and he recommended surgery. Claimant confirmed that walking causes pain in her right hip. She also indicated that bending in order to pat down inmates and visitors causes hip pain. Further, Claimant continues to experience stiffness in her right knee. Claimant denied any ongoing problems related to her left knee or lower back. She also denied any problems with her right hip before the August 2012 injury.

Claimant also testified by deposition. She testified that in August 2012, three adults fell on her, at which time she injured not only her right knee but also her right hip, groin, and lower back. She noticed hip and groin pain a few days after the incident. Claimant further testified that she did not feel that she recovered from the August 2012 injury. She continues to receive care from her chiropractor as well as her Physician. Claimant further indicated she continues to have pain in her right hip, groin, and low back, particularly with bending.

In addition, Claimant submitted a medical report from Dr. Thomas Kramer.[2] At the time of examination, Claimant complained of daily pain in her lower back, right hip, and right knee. Based on his examination and a review of Claimant's medical records, Dr. Kramer opined Claimant sustained a right knee meniscal tear, and she reached maximum medical improvement. Dr. Kramer also opined a labral tear of Claimant's right hip was not a likely consequence of the work injury, but could have been aggravated by Claimant's altered gait as a result of her right knee injury.

---

[2] Before the WCJ, the parties agreed to proceed based on the submission of medical reports rather than medical deposition testimony. Certified Record, Item #22, WCJ's Hr'g, Notes of Testimony, 12/21/15, at 15-16.

Claimant also submitted a report from an MRI performed in July 2013, which indicated the presence of a tear of the anterior superior labrum as well as minimal insertional tendinopathy versus partial tear at the trochanteric insertion of the right gluteus medius.

In addition, Claimant submitted records from West Penn Allegheny Health System, detailing an evaluation in June 2013. At that time, Claimant indicated the onset of hip pain diffusely about the right hip in February and March 2013. Claimant had a follow-up visit in July 2013; a diagnosis from that visit was a right anterior and acetabular labral tear. The examining physician opined this diagnosis was work-related given the mechanism of injury. Claimant was referred for an appointment with her Physician.

Claimant's Physician reported that Claimant was seen on a referral after an MRI revealed a labral tear. Claimant's Physician performed a physical examination. At that time, Claimant's Physician opined Claimant had a right hip labral tear likely related to the work injury based on Claimant's continuing complaints of pain. Additionally, Claimant submitted a diagnostic imaging report from August 2015, which Claimant's Physician ordered. This study was interpreted as showing small anterior superior and superior lateral labral signal changes compatible with small tears.

Claimant also submitted a report from her Physician, who opined Claimant has a labral tear of the hip related to the traumatic event that occurred in August 2012. Claimant's Physician recommended repair to alleviate symptoms in

5

the hip. Claimant's Physician also authored a supplemental report indicating he reviewed statements from Employer's physicians. Ultimately, Claimant's Physician opined that the torn labrum was a result of or aggravated by the August 2012 work injury.

In response, Employer submitted the reports of its physician, Dr. Kelly Agnew (Employer's Physician), who examined Claimant. Employer's Physician opined Claimant sustained a work-related right knee injury with no evidence of lingering knee joint pathology. He also opined there was no evidence of a hip joint injury or a lower back injury resulting from the August 2012 work incident. Employer's Physician authored supplemental reports in which he opined Claimant's hip complaints predated her August 2012 injury. Employer's Physician opined that, had a labral tear occurred at the time of the August 2012 injury, Claimant would have experienced immediate symptoms. He further opined the modest degenerative changes in the right labrum were not aggravated, accelerated, or altered by the August 2012 work injury.

Employer also submitted a report from Dr. Thomas Muzzonigro, who examined Claimant in October 2015. Dr. Muzzonigro opined Claimant sustained a right knee injury in August 2012, from which she recovered. Dr. Muzzonigro indicated he could not find any injury to Claimant's right hip resulting from the August 2012 work incident. In a supplemental report, Dr. Muzzonigro further opined Claimant's hip complaints were unrelated to her work activities in August 2012. He opined Claimant's right hip was not injured and the work incident did not aggravate Claimant's right hip complaints.

Ultimately, the WCJ credited the testimony of Claimant and her Physician. In so doing, the WCJ made the following determinations as to credibility and evidentiary weight (with emphasis added):

26. Based upon the testimony of [Claimant], who I deem credible, I find that [Claimant] sustained an injury to her right hip and groin at the time of the injury of August 29, 2012. [Claimant's] testimony regarding the occurrence of the injury at the time of hearing is consistent with the history described in the numerous medical records either offered as exhibits or reviewed by the physicians who have evaluated her. I also note that while [Claimant] had complaints of bilateral hip pain approximately one month prior to her work injury, those complaints were nonspecific in nature. Since the work injury [Claimant's] complaints have been consistent. I also find [Claimant] credible based upon her efforts to remain at work despite her ongoing complaints of pain and restrictions.

27. In resolving the medical questions presented I find the opinion of [Claimant's Physician] to be credible and convincing. As a result, I find that [Claimant], in addition to sustaining a meniscal tear in her right knee, also sustained a labral tear in the right hip. In finding [Claimant's Physician] credible I accept his opinion that the mechanism of injury as described by [Claimant] at the hearing to be consistent with the type of injury that can result in hip labral tearing. I also consider his opinion to be more credible than the opinions of Dr. Kramer, [Employer's Physician], and/or Dr. Muzzonigro. [Claimant's Physician] indicated that there were no significant degenerative changes on imaging of the right hip. [Claimant's Physician] also indicated that the other evaluating physicians had failed to perform the appropriate provocative testing to determine the presence of labral tear pain. [Claimant's Physician] is convincing in suggesting that the complaints of right hip pain would have gone unnoticed at the time of injury because of the nature of the injury to the right knee.

7

28. I find the opinions of Dr. Kramer, [Employer's Physician], and Dr. Muzzonigro to be credible with respect to their determination that [Claimant] did sustain a right knee injury on August 29, 2012. I also find their opinions are credible with regard to their findings concerning [Claimant's] lower back issues. [Claimant] has failed to offer any competent medical evidence to establish a work related lower back condition as a result of the August 29, 2012, injury. To the extent that their opinions differ from that of [Claimant's Physician] with respect to the labral tear I find them not as credible as the opinion of [Claimant's Physician].

WCJ's Op., 9/12/16, Findings of Fact (F.F.) Nos. 26-28.

As a result, the WCJ concluded Claimant sustained the burden of proof on her review petition, in part. Specifically, the WCJ determined Claimant satisfied her burden of proving the injury description should be expanded to include a labral tear of the right hip. The WCJ also determined the injury description should not be expanded to include low back, right side pain, or left knee injury.

In addition, the WCJ determined Employer did not sustain its burden of proving Claimant fully recovered from her work injuries as of February 5, 2014, or any other date. The WCJ determined that, because Claimant sustained, in addition to a right knee meniscal tear, a right hip labral tear, Employer could not prevail on its termination petition. The WCJ stated: "It is well-settled that when an expert's opinion is based upon an assumption, which is contrary to the established facts of record, that opinion is [worthless]." Williams v. Workers' Comp. Appeal Bd. (Hahnemann Univ. Hosp.), 834 A.2d 679, 684 (Pa. Cmwlth. 2003) (citing Noverati

8

v. Workmen's Comp. Appeal Bd. (Newtown Squire Inn), 686 A.2d 455 (Pa. Cmwlth. 1996)).

As a result, the WCJ ordered Employer to pay all of Claimant's reasonable and necessary medical expenses for the treatment of Claimant's right knee injury and the labral tear of her right hip. The WCJ further stated there were no immediate indemnity benefits payable to Claimant. Employer appealed to the Board, which affirmed. This petition for review by Employer followed.[3]

## II. Discussion
### A. Claimant's Review Petition

Employer first argues the record does not support the WCJ's grant of Claimant's review petition to expand the scope of the work injury to include a labral tear of the right hip. Employer contends the WCJ's finding crediting Claimant's testimony cannot be reconciled with the WCJ's findings concerning the medical evidence, which contradicted Claimant's testimony.

More specifically, Employer maintains, Claimant testified she noticed a problem with her right hip a few days after the August 2012 work injury. However, Employer asserts, no medical records support her complaints. Employer argues a June 2013 report from West Penn Allegheny Health System was the first documented instance in which Claimant presented with any hip complaints. Employer argues that report stated Claimant noted the onset of hip pain diffusely in

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

9

February or March 2013. Employer contends this is contrary to Claimant's testimony, which the WCJ credited and which served as the basis for Claimant's Physician's medical opinion. As a result, Employer asserts Claimant's Physician's opinion is based on an inaccurate history; thus, it is incompetent. See Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.), 692 A.2d 1062 (Pa. 1997). Employer further asserts the WCJ's decision is fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, that it is irrational. See Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.), 962 A.2d 14 (Pa. Cmwlth. 2008). We disagree.

As the ultimate fact-finder in workers' compensation cases, the WCJ "has exclusive province over questions of credibility and evidentiary weight …." A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness in whole or in part. Id.

Further, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53, 60 (Pa. Cmwlth. 2014) (citation omitted). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Id. Also, we must view the evidence in the light most

10

favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. Id.

In addition, to satisfy the reasoned decision requirements of Section 422(a) of the Workers' Compensation Act (Act),[4] a WCJ must set forth the rationale for the decision by specifying the evidence relied on and reasons for accepting it. Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.), 828 A.2d 1043 (Pa. 2003); Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.), 893 A.2d 191 (Pa. Cmwlth. 2006). When conflicting evidence is presented, the WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. Daniels. "[T]he purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another." Dorsey, 893 A.2d at 196 (citation omitted).

However, "Section 422(a) does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." Id. at 195 (emphasis added). "Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." Id.

Under Section 413(a) of the Act, 77 P.S. § 771, a WCJ may amend an NCP at any time during the litigation of any petition if the evidence shows the injury sustained in the original work incident is different or more expansive than that listed in the NCP. Harrison v. Workers' Comp. Appeal Bd. (Auto Truck Transp. Corp.), 78 A.3d 699, 704 (Pa. Cmwlth. 2013) (citing Cinram Mfg., Inc. v. Workers' Comp.

---

[4] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §834.

11

Appeal Bd. (Hill), 975 A.2d 577, 580-81 (Pa. 2009)).  This is known as a "corrective amendment."  Id.  Additionally, the NCP can be amended if the claimant files a review petition and proves that another injury subsequently arose as a consequence of the original injury.  Id.  The party seeking to amend the NCP has the burden of proving the NCP is materially incorrect.  Id. (citing Namani v. Workers' Comp. Appeal Bd. (A. Duie Pyle), 32 A.3d 850 (Pa. Cmwlth. 2011)).

Contrary to Employer's assertions, the record here supports the WCJ's grant of Claimant's review petition to include a labral tear of the right hip.  To that end, Claimant's Physician credibly opined (with emphasis added):

> I do believe with a reasonable degree of medical certainty that [Claimant's] hip labral tear, and the pain she suffers from this tear are related to a single traumatic event as there is no significant degenerative change on imaging of the hip, and no bony deformity.  Her lack of the physical exam findings on previous surgeons['] exam[s] likely relate[s] to the cursory nature of those exams, and the fact that none of those physicians performed tests sensitive for labral tear pain ….  Furthermore, the nature of her work injury on August 29, 2012, would be consistent with an injury mechanism for hip labral tearing.  If the labral tear was somehow present prior to the injury, it was clearly aggravated or worsened in that case by the injury.

> It is my opinion that her hip labral tear went unnoticed initially as she had a distracting injury in … the knee that was more painful and severe.  Furthermore, as the knee pain resolved the hip pain was felt to be secondary to compensation for the knee pain.  This is reasonable as hip flexor pain is common when patients are … limping, and is very difficult to distinguish from … hip labral pain, especially in the absence of specific testing.  When the hip pain did not resolve, the labral tear was ultimately found, and was present since the time of the initial injury.

12

The timeline of her injury and treatments are reasonable in my opinion. It is therefore my opinion with a reasonable degree of medical certainty, as a board-certified orthopedic surgeon specializing [in] sports medicine and … hip arthroscopy that [Claimant's] hip labral tear and corresponding pain does relate back to the initial injury of August 29, 2012. …

Furthermore, while I agree that an acute labral tear [should] elicit pain on initial examination, distracting injuries in orthopedic trauma very frequently mask these more minor injuries. The nature of a labral tear is that it leads to micro instability of the hip causing progressive groin and ultimately lateral hip pain over several months or years. I disagree that this is an atypical presentation overall for this injury, and there is nothing that I find questionable with the timeline presented to me by the patient. There is also concern by Dr. Muzzonigro that the patient had several immediate post[-]injury evaluations which documented normal hip range of motion, I do not find that to be of concern as this was a traumatic injury and I typically only see limited hip range of motion once there is significant synovitis within the hip joint or bony deformity. …

I … believe with a reasonable degree of medical certainty that the torn labrum was a result of or was aggravated by the injury August 29, 2012.

R.R. at 191-94. Thus, Claimant's Physician's opinion supports the WCJ's grant of Claimant's review petition to expand the scope of Claimant's recognized work injury to include a labral tear of the right hip.

Further, contrary to Employer's assertions, our review of the WCJ's findings and the record reveals no inconsistency between the credited testimony of Claimant and her Physician regarding the history of Claimant's right hip symptoms. To that end, Claimant testified she noticed problems with her right hip "a few days"

13

after the August 2012 work injury.  F.F. No. 6(d); R.R. at 41.  Our review of Claimant's Physician's reports reveals no inconsistency with Claimant's testimony concerning the history of symptoms related to her right hip injury.  R.R. at 191-94.  In fact, in his supplemental report, Claimant's Physician stated, "it was noted 1 day post[-]injury that [Claimant] was complaining of hip pain."  R.R. at 194.  Additionally, the WCJ expressly credited Claimant's Physician's opinion that "the hip labral tear went unnoticed initially because the injury to the knee would have caused distracting pain."  F.F. No. 15; see F.F. No. 27; R.R. at 192.

This is not a case like Newcomer, cited by Employer.  Under Newcomer, a medical expert's opinion is not rendered incompetent unless it is based *solely* on inaccurate or false information.[5]  Here, unlike in Newcomer, Claimant's Physician's opinion that Claimant's right hip injury was work-related was not based solely on a false or inaccurate medical history.  To the contrary, Claimant's Physician's opinion was based on his physical examination, his review of an MRI, and Claimant's history.  Further, Claimant's Physician's understanding of the mechanism of injury and Claimant's subsequent complaints were consistent with Claimant's testimony here.  To that end, Claimant credibly testified that she "complained to Employer's [workers' compensation panel physicians] about her right hip and groin" after the August 2012 work incident.  F.F. No. 6(f); R.R. at 44.

---

[5] Specifically, in Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corp.), 692 A.2d 1062 (Pa. 1997), the claimant was injured in 1989 and received treatment and partial disability benefits for an abdominal injury.  Several years later, he sought total disability benefits for disability arising from an alleged shoulder injury incurred with the 1989 abdominal injury.  However, there was no record of any shoulder complaint or shoulder treatment between 1989 and 1991.  Indeed, the claimant did not mention any shoulder injury during his early testimony in the compensation proceedings.  Our Supreme Court rejected the causation opinion of the claimant's physician, which assumed the accuracy of the claimant's representation of a dormant work injury, a representation contradicted by medical records.

14

Nevertheless, Employer points to a June 2013 West Penn Allegheny Health System report authored by Dr. Julius J. Huebner, which states: "Regarding [Claimant's] hip, she apparently noted onset of hip pain <u>diffusely</u> about the right hip in February or March, 2013 (<u>she states that is a guess</u>).  She does not recall the exact onset of her hip pain."  Certified Record, Item #29, Ex. C-05 at 1 (emphasis added).  This statement does not render Claimant's Physician's opinion incompetent.  Indeed: (1) Claimant's Physician did not author this report; (2) the report states Claimant *guessed* she noticed the onset of hip pain *diffusely* (as opposed to the onset of *any* hip pain) in February or March 2013, <u>id.</u>; and, (3) Claimant *did not recall the exact onset of pain*.  Thus, while this statement in the June 2013 West Penn Allegheny Health System report may have impacted the WCJ's resolution of issues of credibility and evidentiary weight, it did not render Claimant's Physician's opinion incompetent.

Moreover, Employer's reliance on <u>Casne</u> is misplaced.  There, we rejected a claimant's argument that an employer's medical expert's testimony was incompetent and could not support a termination of benefits where the claimant's arguments went to the credibility of the witness rather than the competency of the witness's testimony.  <u>Casne</u> does not aid Employer's argument here.

### B. Employer's Termination Petition

Employer also contends the WCJ failed to issue a reasoned decision because the WCJ did not make any credibility determinations concerning whether

15

Claimant fully recovered from her right knee meniscal tear. Employer argues the WCJ erred in determining the medical opinions of Employer's Physician and Drs. Muzzonigro and Kramer were worthless as to the issue of Claimant's recovery from her accepted right knee injury solely because these physicians did not find Claimant's right hip labral tear was caused by her August 2012 work injury.

Employer asserts Claimant's Physician did not provide any opinion as to Claimant's right knee condition. Employer maintains its Physician and Drs. Muzzonigro and Kramer all found Claimant recovered from her work-related knee injury, and Claimant testified she needed no more treatment for her knee and her knee was fine. Nevertheless, Employer argues, the WCJ still did not find Claimant recovered from her accepted August 2012 right knee injury. Employer contends the WCJ failed to specifically address this issue. It further argues that, if this Court upholds the grant of Claimant's review petition to include the right hip labral tear, this Court should grant a partial termination of benefits[6] as to Claimant's right knee injury, which fully resolved.

To terminate a claimant's benefits, the employer bears the burden of establishing that either the claimant's disability ceased or that her remaining disability is unrelated to the work injury. Gillyard v. Workers' Comp. Appeal Bd.

---

[6] The reduction in liability to which Employer refers is properly characterized as a modification of the recognized work injury rather than a partial termination. See Doerfler v. Workers' Comp. Appeal Bd. (Winegardner & Hammons, Inc.) (Pa. Cmwlth., No. 1550 C.D. 2016, filed May 31, 2017), slip op. at 3, 2017 WL 2350446 at *1 n.1 (unreported) (reduction in scope of recognized work injuries is tantamount to modification of notice of compensation payable; under Section 413 of the Workers' Compensation Act, 77 P.S. §772, a WCJ "may, at any time, modify, reinstate, suspend, or terminate a[n] [NCP] ... upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased."). As explained more fully below, however, Employer is not entitled to such relief here.

(Pa. Liquor Control Bd.), 865 A.2d 991 (Pa. Cmwlth. 2005) (en banc). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from her work-related injuries. Id. Further, an employer's burden of proof in a termination proceeding "never shifts to the claimant because disability is presumed to continue until proved otherwise." Marks v. Workers' Comp. Appeal Bd. (Dana Corp.), 898 A.2d 689, 693 (Pa. Cmwlth. 2006). In order to terminate benefits, an employer must prove that *all* of a claimant's work-related injuries have ceased. Cent. Park Lodge v. Workers' Comp. Appeal Bd. (Robinson), 718 A.2d 368 (Pa. Cmwlth. 1998).

Here, the WCJ did not credit the opinions of Employer's Physician or Drs. Muzzonigro and Kramer[7] to the extent those physicians opined Claimant fully recovered from her accepted right knee injury. F.F. Nos. 27, 28. The WCJ determined, "inasmuch as [Claimant] has sustained, in addition to a right knee meniscal tear, a right hip labral tear, [Employer] cannot prevail on its [t]ermination [p]etition." WCJ Op., Concl. of Law No. 2 (emphasis added). Thus, the WCJ ordered: "[Employer] remains responsible for all reasonable and necessary medical expenses [Claimant] has incurred to date and may incur in the future for treatment of the right knee injury and the labral tear of the right hip." WCJ Op. at 12.

In short, because the WCJ did not credit the opinions of Employer's Physician or Drs. Muzzonigro and Kramer to the extent those physicians opined Claimant fully recovered from her accepted right knee injury, Employer could not meet the burden of proof on its termination petition. Further, as the Board stated,

---

[7] As explained above, in his report Dr. Kramer opined that Claimant reached maximum medical improvement.

17

"[d]espite [Employer's] contention to the contrary, where Claimant testified both that she was experiencing stiffness in her right knee, and later, that her right knee was 'fine,' this did not constitute evidence enough that Claimant's knee was *fully* recovered, especially where the WCJ did not credit [Employer's] medical witnesses in this regard." Bd. Op., 10/20/17, at 14 (emphasis in original).

      Based on the foregoing, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny,             :

         Petitioner     :

                           :

        v.             :   No. 1722 C.D. 2017

                           :

Workers' Compensation Appeal  :

Board (Bonenberger),       :

         Respondent  :

# **O R D E R**

**AND NOW**, this 14th day of May, 2018, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____

ROBERT SIMPSON, Judge