IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shahzad Faisal,                          :
                    Petitioner           :
                                         :
          v.                             : No. 11 C.D. 2017
                                         : Submitted:  May 12, 2017
Workers' Compensation Appeal             :
Board (City of Philadelphia Prisons      :
Department),                             :
                    Respondent           :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                        FILED: June 6, 2017


          Shahzad Faisal (Claimant) petitions for review of the order of the

Workers' Compensation Appeal Board (Board) affirming the Workers'

Compensation Judge's (WCJ) decision granting the City of Philadelphia Prisons

Department's (Employer) termination petition.  We affirm.


                                    I.

          On August 22, 2007, Claimant sustained an injury while in the course

and scope of his employment as a corrections officer at the Curran-Fromhold

Correctional Facility in Philadelphia when he was involved in an altercation with

an inmate.  On September 4, 2007, Employer issued a Notice of Compensation

Payable (NCP) acknowledging as compensable an injury described as a "soft tissue injury, fracture" to Claimant's "right hand, right middle finger." (Reproduced Record (R.R.) at 1a.) Claimant received injured-on-duty (IOD) benefits in lieu of compensation while he was temporarily disabled pursuant to Philadelphia Civil Service Regulation 32.[1]

Claimant attempted to return to work on September 18, 2007, and continued working until September 25, 2007, when he stopped due to his work injury. After filing a reinstatement petition, the parties entered a stipulation whereby Employer acknowledged, once more, that Claimant sustained a work-related injury in the nature of a soft tissue injury to the right hand and a fractured right middle finger. The stipulation further provided that Employer agreed to accept liability for the reinstatement petition, to pay Claimant total disability wage loss compensation benefits, and to accept liability for medical expenses incurred for Claimant's work injuries.

On December 18, 2008, Employer filed a termination petition (First Termination Petition)[2] alleging that Claimant made a full recovery and was able to return to work unrestricted. The only filing that Claimant submitted in response to the First Termination Petition was an answer denying his full recovery. Claimant never filed a review petition to modify the description of his work injury.

[1] IOD benefits for temporary compensation are awarded under Philadelphia Civil Service Regulation Section 32.0414.

[2] Specifically, Employer filed a Petition to Terminate Compensation Benefits and a Petition to Terminate Compensation Based on Physician's Affidavit.

## II.

On March 3, 2010, the WCJ (First WCJ) circulated a decision and order denying the First Termination Petition (2010 Decision). The first finding of fact of that decision provides:

> 1. On August 22, 2008 [sic], **Claimant sustained a work related injury to his right hand and a fractured middle finger**. The injury occurred when an inmate engaged Claimant in an altercation while in the course and scope of his employment as a corrections officer.

(R.R. at 12a) (emphasis added). The First WCJ also made the following findings of fact regarding the testimony of Employer's independent medical evaluation (IME) physician, Bong S. Lee, M.D. (Dr. Lee), as well as Claimant's physician, Maurice Singer, D.O. (Dr. Singer):

> Based upon [his January 28, 2009] physical examination, the records review, and the history obtained by Claimant [throughout the past two years since his injury], **Dr. Singer diagnosed Claimant with fracture of the right hand, fracture of the third right hand digit, internal derangement of the right wrist, triangular fibrocartilage tear of the right wrist, tenosynovitis of the right thumb, cervical radiculopathy, anxiety reaction, cervical strain and sprain and cervical myositis.**
>
> **Dr. Singer opined within a reasonable degree of medical certainty that all of the aforementioned diagnoses are causally related to the incident at work on August 22, 2007. . . .**
>
> Upon careful review of the testimony this Court has determined that **Dr. Singer is a credible and persuasive witness**. **Dr. Singer's testimony is accepted in its**

3

> **entirety as fac**t. . . .
>
> Dr. Lee is a Board certified orthopedic surgeon and maintains an active orthopedic practice. Dr. Lee performed an independent medical examination on December 2, 2008. . . .
>
> * * *
>
> Dr. Lee testified that Claimant did not initially present himself with complaints relative to the wrist. Dr. Lee's examination of Claimant's right hand revealed no acute distress. Dr. Lee's examination of Claimant's cervical spine was essentially normal with full range of motion with no complaint of pain, muscle spasms, or local tenderness. Dr. Lee also examined Claimant's upper extremities including the shoulder, elbow, and right hand. Dr. Lee opined that Claimant's examination was normal with full range of motion.
>
> * * *
>
> Upon careful review of the testimony this Court has determined that **Dr. Lee is not credible, and not persuasive when testifying about Claimant's current physical condition.** Dr. Lee's testimony is rejected where in conflict with Dr. Singer and/or Claimant. . . .

(R.R. at 13a-15a) (enumerations omitted, emphasis added).

Other than Finding of Fact No. 1, which provides that "Claimant sustained a work related injury to his right hand and a fractured middle finger," (R.R. at 12a) the 2010 Decision does not describe Claimant's accepted work injury. In fact, the decision does not discuss whether those additional injuries described by Dr. Singer were present when Claimant was originally injured, Claimant's burden for modifying the NCP or whether Claimant met that burden.

4

*See City of Philadelphia v. Workers' Compensation Appeal Board (Smith)*, 860 A.2d 215, 223 (Pa. Cmwlth. 2004). The decision also does not indicate whether the First WCJ intended to modify Claimant's work injury when accepting Dr. Singer's testimony as credible.

The 2010 Decision concludes, "[Employer] has failed to sustain its burden of the Termination Petition alleging that Claimant is fully recovered from the August 22, 2007 work injury. The Termination Petition is denied." (R.R. at 16a.) Consistent with this conclusion of law, the decision's order similarly provides that the First Termination Petition is "hereby DENIED in accordance with the foregoing Findings of Fact and Conclusions of Law." *Id.* The decision's conclusions of law and order do not provide a description of Claimant's work injury or indicate a modification.

**III.**

On December 4, 2014, Employer filed another termination petition (Second Termination Petition) alleging that Claimant was fully recovered as of November 18, 2014, based on the IME of Dr. Gregory Tadduni (Dr. Tadduni), who is an orthopedic surgeon. The matter was assigned to a different WCJ (Second WCJ).

As pertinent, Dr. Tadduni testified that he examined Claimant on November 18, 2014. Based on Claimant's medical history, a physical examination and a review of Claimant's x-rays and medical records, Dr. Tadduni opined that Claimant was fully recovered from his August 22, 2007 work injury which he

5

described as consisting of a soft tissue injury and fracture to Claimant's right hand. It is undisputed that Dr. Tadduni did not acknowledge any of the additional injuries that Dr. Singer testified to with regard to the First Termination Petition.

In response, Claimant testified as to the pain and status of his work injury and offered the expert testimony of Mario Diprinzio, D.C. (Dr. Diprinzio), who is a licensed chiropractor in the Commonwealth. As pertinent, Dr. Diprinzio testified that he examined Claimant on multiple occasions dating back to January 28, 2013, and it is his opinion that Claimant is not fully recovered from his work injury because he continues to suffer from carpal tunnel syndrome and de Quervain tenosynovitis of the right hand and wrist, both of which are injuries not contained in the NCP.

In his testimony, Dr. Diprinzio did not discuss the particularized injuries set forth in the NCP and no portion of his or Dr. Tadduni's testimony acknowledges, accepts or otherwise mentions the injuries testified to by Dr. Singer in the First Termination Petition.

On April 20, 2016, the Second WCJ issued a decision and order granting Employer's Second Termination Petition (2016 Decision). As pertinent, the Second WCJ rejected Claimant's testimony of continuing pain and disability noting personal observations and accepted the testimony of Dr. Tadduni over that of Dr. Diprinzio. Accordingly, the Second WCJ concluded that Employer met its burden of proving that Claimant was fully recovered from his work injuries as of November 18, 2014. The WCJ also noted that the 2010 Decision:

6

. . . accepted as credible the testimony of Claimant's treating physician, Dr. Singer, who diagnosed "fracture of the right hand, fracture of the third right hand digit, internal derangement of the right wrist, triangular fibrocartilage tear of the right wrist, tenosynovitis of the right thumb, cervical radiculopathy, anxiety reaction, cervical strain and sprain and cervical myositis." While a judge's findings in a termination petition can expand the description of injury, I decline to consider these parts of the accepted and adjudicated injuries, as the Supreme Court has clearly distinguished corrective amendments, which can be made without a review petition, from amendments addressing consequential conditions, which require a review petition. [*Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009).] The accepted work injury was a "right hand, right middle finger soft tissue injury, fracture" and I find that Claimant is recovered from that injury.

(R.R. at 22a.)

Claimant appealed to the Board contending, in relevant part, that the 2010 Decision denying Employer's First Termination Petition expanded the description of his acknowledged work injury to include a "fracture of the right hand, fracture of the third right hand digit, internal derangement of the right wrist, triangular fibrocartilage tear of the right wrist, tenosynovitis of the right thumb, cervical radiculopathy, anxiety reaction, cervical strain and sprain and cervical myositis." (R.R. at 13a.) The Board rejected this argument and affirmed. As the Board reasoned:

On the contrary, we understand the caselaw [*sic*] to reflect that where there is medical testimony concerning additional work-related conditions, which testimony was

7

accepted by a WCJ in an initial decision denying a termination petition, such testimony functions to add to the injury description only when the WCJ in that initial decision specifically denied the termination petition "based on [the claimant's] non-recovery from work injuries not accepted in the NCP". . . . Because we conclude that WCJ Bachman's determination of "non-recovery" in the 2010 decision was not related to Claimant's "non-recovery from work injuries not accepted in the NCP" but was based instead on the WCJ's independent credibility determination – unconnected to her credibility determination accepting Dr. Singer's testimony concerning the additional work injuries – that "Dr. Lee is not credible and not persuasive when testifying about Claimant's current physical condition[]" . . . Thus the additional medical conditions as testified to by Dr. Singer, which conditions were not formally added to the injury description in WCJ Bachman's 2010 decision, from which decision no appeal was taken, do not constitute part of the accepted injury description, and therefore, in the instant case, Dr. Tadduni was not required to address those conditions in his testimony of full recovery.

(R.R. at 36a-37a) (quoting *Mino v. Workers' Compensation Appeal Board (Crime Prevention Association)*, 990 A.2d 832, 839 (Pa. Cmwlth. 2010)) (internal citations and footnotes omitted). Claimant then filed this petition for review.[3]

---

[3] Our review of a decision of the Board is limited to determining whether errors of law were made, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 n.4 (Pa. Cmwlth.), *appeal denied*, 982 A.2d 1229 (Pa. 2009).

8

## IV.

On appeal, Claimant again contends that his work injury was modified by the 2010 Decision and that, as a result, Dr. Tadduni's testimony must be deemed incompetent because he failed to acknowledge those additional injuries. *See GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087 (Pa. Cmwlth. 2001).

Because the 2010 Decision did not explicitly find or modify Claimant's work injury, did not acknowledge Claimant's burden for modifying that injury, and did not address whether he met his burden for modifying his work injury, the issue then is whether, notwithstanding all of that, additional injuries described by Dr. Singer were implicitly accepted by the 2010 Decision.

## A.

Section 413(a) of the Workers' Compensation Act (Act)[4] provides, in relevant part:

> A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable . . . or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect. [77 P.S. § 771.]

---

[4] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 771–772.

9

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable . . . upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased. . . . Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased . . . [77 P.S. §772.]

How the description of an injury is modified was addressed in *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 932 A.2d 346 (Pa. Cmwlth. 2007), *aff'd*, 975 A.2d 577 (Pa. 2009). In that case, a claimant sustained a work injury and his employer issued an NCP identifying the injury as "lumbar strain/sprain." His employer subsequently filed a petition to terminate benefits. At a hearing, the parties presented conflicting evidence to the WCJ. Significantly, the claimant's evidence supported the finding of an aggravation of a pre-existing disc herniation resulting in nerve impingement, medical conditions beyond the lumbar strain and/or sprain accepted in the NCP. The WCJ credited Claimant's evidence, denied termination, and directed amendments to the NCP. On appeal, the Board affirmed as did a split-panel of this Court.

Our Supreme Court allowed an appeal "primarily to address whether, during a termination proceeding, a workers' compensation judge may correct a notice of compensation payable to subsume injuries not specifically contemplated by the original notice." *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 577–78 (Pa. 2009). Analyzing the plain language contained in both paragraphs of Section 413(a) of the Act, the Court,

making a distinction between corrective and consequential amendments to the NCP, concluded, in relevant part:

> Corrective amendments and amendments to address consequential conditions require independent consideration, since the Legislature treated them in separate and distinct passages of Section 413(a). Corrective amendments are covered by the first paragraph, codified at . . . 77 P.S. § 771, which applies only in circumstances in which there was an inaccuracy in the identification of an existing injury. Amendments pertaining to an increase, decrease, recurrence, or cessation of disability are addressed in the second paragraph of Section 413(a), codified at . . . 77 P.S. § 772.
>
> Importantly, Section 771 specifies that amendments under its terms may be made "in the course of the proceedings under *any* petition pending before [the] workers' compensation judge." 77 P.S. § 771 (emphasis added). However, this language is absent from Section 772, which authorizes amendments "upon petition filed by either party." 77 P.S. § 772. Thus, it is apparent that the Legislature intended to allow corrective amendments at any time and in any procedural context; whereas, amendments based on consequential conditions are to be made only upon consideration of a specific review petition.

*Id.* at 580–81 (emphasis in original).

Since our Supreme Court decided *Cinram*, this Court has had the opportunity to reiterate that a WCJ may only *sua sponte* modify an NCP when the amendments are "corrective" in nature; "consequential" amendments – *i.e.*, amendments pertaining to an increase, decrease, recurrence or cessation of an

11

accepted injury – are to be made only upon consideration of a specific review petition. *See Walter v. Workers' Compensation Appeal Board (Evangelical Community Hospital)*, 128 A.3d 367 (Pa. Cmwlth. 2015); *see also Harrison v. Workers' Compensation Appeal Board (Auto Truck Transportation Corporation)*, 78 A.3d 699, 705 (Pa. Cmwlth 2013), *as amended* (Oct. 31, 2013). To the extent, then, that any of the injuries Dr. Singer described are consequential conditions, because Claimant had not filed a review petition, those conditions do not amend the NCP.

**B.**

*Cinram* provides that a formal petition is not needed to make a corrective amendment to the NCP but there are several decisions by this Court that illustrate that that can only occur when those findings are necessary to the outcome of the case.

In *Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 865 A.2d 991, 992 (Pa. Cmwlth. 2005), a claimant injured his back and received benefits pursuant to an NCP that described the work injury as a "lower back sprain and strain." *Id*. at 992. His employer filed a termination petition alleging full recovery. Ultimately, the first WCJ denied the employer's first termination petition finding that the claimant had additional injuries to his back. Later, when a second termination petition was filed and granted by a different WCJ, the issue on appeal to this Court was whether that first proceeding modified the claimant's NCP. We found that it did, explaining:

12

> **Based on** objective tests and the credible testimony of William Chollak, M.D., Claimant's treating physician, WCJ Hines found that Claimant had not recovered from his December 1992 work injury; instead, **he found that Claimant would continue to suffer from disabling "chronic sciatica at the L5-S1 distribution on the right side with disc bulging at L4-5 and L5-S1 area,"** which was caused by that injury. (WCJ Hines' Findings of Fact, Nos. 4, 7.) Employer did not appeal from this decision.

*Gillyard*, 865 A.2d at 992-93 (emphasis added). Because the first WCJ's determination was "based on" credible testimony and **explicitly** found that claimant would suffer from those non-recognized injuries, we determined that those additional injuries were accepted and that the NCP was implicitly modified. Accordingly, we held that for the employer to prevail in a later termination petition, it had to establish that the claimant recovered from those additional injuries.

Significantly, in *Gillyard*, we also recognized that the employer was also aware that the claimant's injury had been judicially established as "chronic sciatica at the L5-S1 distribution on the right side with disc bulging at L5-S1" in the proceedings for the first termination petition. 865 A.2d at 993.

Similarly, in *Westmoreland County v. Workers' Compensation Appeal Board (Fuller),* 942 A.2d 213 (Pa. Cmwlth. 2008), a certified nurses' aide sustained a work injury while moving a patient. Her employer issued an NCP accepting liability for a "lumbar strain." In a hearing involving Employer's termination petition, the claimant's doctor testified that he "diagnosed a herniated

13

L4–5 disc and post-traumatic lumbar radiculopathy at the L–5 level that were **caused or aggravated** by her [work-related injury]." *Id.* at 215 (emphasis added). During a proceeding for a subsequent termination petition filed by the employer which was assigned to **the same WCJ**, that WCJ "determined Claimants [*sic*] work injury included a herniated L4–5 disc and post-traumatic lumbar radiculopathy at L–5." *Id.* at 215. Ultimately, on appeal, we analogized the facts of *Fuller* to those in *Gillyard* and concluded that "even though the NCP was not formally amended, once the WCJ **found** in the first termination petition that Claimant suffered a herniated L4–5 disc and lumbar radiculopathy, those became accepted injuries." *Id.* at 217 (emphasis added). In other words, that WCJ "implicitly" made a corrective amendment to the NCP. *See id.* at 217, 218.

More recently, in *Mino*, a claimant sustained a work injured that was later accepted in an NCP to be a "lumbar sprain and strain." *Mino*, 990 A.2d at 835. Initially, the parties filed numerous petitions including a modification petition and the employer's first termination petition. With regard to the first termination petition, the WCJ concluded, in relevant part, that the employer failed to prove that claimant fully recovered from his work-related injuries. In reaching that conclusion, the WCJ did not specifically state that she was amending the injury description contained in the NCP; however, she credited the testimony of claimant's expert over the testimony of the employer's expert. Ultimately, the employer filed a second termination petition, which a different WCJ granted, but did not include the additional injuries claimant's expert testified to in the first termination proceeding.

14

On appeal, this Court concluded that the first WCJ implicitly modified claimant's injury to include the **preexisting** stenosis. As we reasoned:

> Even in the absence of a formal amendment to an NCP, where a WCJ makes "findings in a termination petition . . . **based on** non-recovery from work injuries not accepted in the NCP, those injuries [become] part of the accepted injury." *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). Moreover, a WCJ's findings expanding the description of injury in an NCP, if unchallenged, are binding on the parties in a subsequent proceeding. *Temple University v. Workers' Compensation Appeal Board (Sinnott)*, 866 A.2d 489, 494 n.4 (Pa. Cmwlth. 2005) (citing *Volkswagon of America, Inc. v. Workers' Compensation Appeal Board (Bennett),* 858 A.2d 151 (Pa. Cmwlth. 2004)). Thus, in order to prevail on a subsequent termination petition, the employer must establish that the claimant recovered from the additionally recognized injuries. *Westmoreland*, 942 A.2d at 217-18.
>
> Here, the First WCJ did not formally indicate that she was amending the description of injury contained in the NCP. **However**, by crediting [claimant's expert] and **denying Employer's First Termination Petition on the basis of that testimony**, the First WCJ implicitly expanded the description of injury to include an aggravation of [claimant's] pre-existing stenosis, as well as the L4–5 radiculopathy. **We find it particularly significant that, in summarizing [the] credited testimony [of claimant's expert], the First WCJ did not reference any testimony concerning a lumbar sprain and strain**. Instead, the First WCJ notes [the expert's] testimony that [claimant] had spurring in his discs resulting in compression of the nerve at L4–5 that admittedly was a pre-existing condition. The First WCJ then indicates that [claimant's expert], nonetheless, explained that [claimant's] fall was an acute trauma that caused his previously asymptomatic condition to become symptomatic. **Notably, with regard to [claimant's]**

15

> **stenosis, the First WCJ specifically stated that: "It was not until his fall that [claimant] became truly symptomatic with nerve involvement."** Thus, according to the First WCJ's findings, [claimant's expert] established that [claimant's] June 20, 2000 fall caused both the back pain and the radicular pain. **Moreover, the First WCJ utilized [that expert's] credited testimony as the basis for the denial of Employer's First Termination Petition**, and neither party appealed the First WCJ's decision and order.

*Mino*, 990 A.2d at 839–40 (emphasis added, citations to the record omitted).

What cases like *Fuller* and *Gillyard* teach us is that where it is certain that the first WCJ accepted additional injuries and those injuries were indisputably present when the NCP was entered and are corrective in nature, that WCJ's acceptance constitutes a corrective modification of the NCP. Similarly, our holding in *Mino* demonstrates that even absent a WCJ's explicit acceptance of additional injuries, where the denial of a termination petition is "based on" – *i.e.*, necessitates – claimant's non-recovery from those additional injuries, the rejection of a termination petition inescapably implies a corrective modification of the NCP.

In other words, absent the filing of a formal petition, a WCJ's order can only implicitly modify an NCP if that modification is corrective in nature and the *sine qua non* of that decision is an acceptance of injuries not accepted in the NCP.

16

**C.**

In this case, there is nothing in the record demonstrating that the outcome of the 2010 Decision was "based on . . . work injuries not accepted in the NCP." *Mino*, 990 A.2d at 839.[5] Save for finding that "Claimant sustained a work related injury to his right hand and a fractured middle finger," (R.R. at 12a) the 2010 Decision does not describe Claimant's accepted work injury, does not indicate whether Claimant's work injury was modified, and entirely fails to discuss whether Dr. Singer's diagnoses were present when Claimant was injured. This is confirmed because it does not appear that even Claimant perceived the 2010 Decision as modifying the NCP. As discussed earlier, when Claimant's expert, Dr. Diprinzio, testified for the Second Termination Petition, he did not acknowledge, accept or otherwise mention Dr. Singer's diagnoses. When cross-examining Employer's expert, Dr. Tadduni, Claimant's counsel also did not ask any questions relating to Dr. Singer's credited testimony from the 2010 Decision.

Accordingly, because the 2010 Decision did not implicitly modify the NCP, we affirm the decision of the Board.

_____
DAN PELLEGRINI, Senior Judge

---

[5] *Accord Lewis v. Workers' Compensation Appeal Board (SEPTA)* (Pa. Cmwlth., No. 1987 C.D. 2011, filed August 30, 2012) (holding that a WCJ's decision did not implicitly expand a claimant's injury in the NCP where there were no findings of fact or conclusions of law as to the claimant's specific injuries or the cause of those injuries, did not render any conclusions with regard to the claimant's recovery, and did not make any findings related to additional injuries suffered by the claimant).

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shahzad Faisal, :
          Petitioner :
           :
          v. : No. 11 C.D. 2017
           :
Workers' Compensation Appeal :
Board (City of Philadelphia Prisons :
Department), :
          Respondent :

**O R D E R**

AND NOW, this 6<u>th</u> day of <u>June</u>, 2017, it is hereby ordered that the order of the Workers' Compensation Appeal Board in the above-captioned case is affirmed.

_____
DAN PELLEGRINI, Senior Judge