**James GILLYARD, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PENNSYLVANIA LIQUOR CONTROL BOARD), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 8, 2004.

Decided Jan. 11, 2005.

Daniel M. Jaffe, Philadelphia, for petitioner.

Audrey J. Copeland, Newtown Square, for respondent.

BEFORE: COLINS, President Judge, and McGINLEY, PELLEGRINI, FRIEDMAN, COHN JUBELIRER, SIMPSON and LEAVITT, JJ.

OPINION BY Judge FRIEDMAN.

James Gillyard (Claimant) petitions for review of the March 18, 2004, order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of workers' compensation judge Francine Lincicome (WCJ Lincicome) to terminate Claimant's benefits as of May 14, 2001. We reverse.

On December 2, 1992, Claimant injured his back while in the course and scope of his employment as a store manager with the Pennsylvania Liquor Control Board (Employer). As a result, Claimant received benefits pursuant to a Notice of Compensation Payable (NCP), dated January 4, 1993, that described Claimant's injury as a lower back sprain and strain.

On June 1, 1995, Employer filed a petition to terminate Claimant's benefits (First Termination Petition), alleging that Claimant had fully recovered from his work-related injury as of May 5, 1995. Claimant filed an answer denying Employer's allegations, and the matter came before WCJ Thomas J. Hines (WCJ Hines), who denied Employer's First Termination Petition. Based on objective tests and the credible testimony of William Chollak, M.D., Claimant's treating physician, WCJ Hines found that Claimant had not recovered from his December 1992 work injury; instead, he found that Claimant would continue to suffer from disabling "chronic sciatica at the L5–S1 distribution on the right side with

disc bulging at L4–5 and L5–S1 area," which was caused by that injury. (WCJ Hines' Findings of Fact, Nos. 4, 7.) Employer did not appeal from this decision.

On August 30, 2001, Employer filed another termination petition (Second Termination Petition), alleging that Claimant had fully recovered from his work-related injury as of May 14, 2001. Claimant denied the allegations, and hearings were held before WCJ Lincicome.

In support of its Second Termination Petition, Employer offered the March 12, 2002, deposition testimony of Easwaran Balasubramanian, M.D., a board-certified orthopedic surgeon, who examined Claimant on May 14, 2001, at Employer's request. Dr. Balasubramanian testified that, at the time, Claimant used a cane to walk but did not appear uncomfortable. He stated that Claimant complained of constant bilateral groin pain, as well as low back pain that Claimant attributed to his 1992 work injury. Claimant also had undergone hip surgeries in 1999, which he did not attribute to his work-related injury. Dr. Balasubramanian testified that Claimant currently was taking painkillers for the hip and back pain.

Dr. Balasubramanian reported that the results of his physical examination indicated that Claimant's back essentially was normal, with no sign of chronic sciatica or L5–S1 radiculopathy.[1] Based on this examination, a review of Claimant's tests and records and consideration of Claimant's medical history, Dr. Balasubramanian diagnosed Claimant with a lumbar sprain/strain by history, which had fully resolved at the time of his May 14, 2001, examination. Dr. Balasubramanian opined that Claimant could not return to his pre-injury position but attributed Claimant's disability to hip problems unrelated to his employment with Employer. (WCJ Lincicome's Findings of Fact, No. 3.)

On cross-examination, Dr. Balasubramanian reaffirmed his opinion that Claimant suffered only sprains and strains as a result of his December 1992 work injury and that Claimant had fully recovered from these strains and sprains. Dr. Balasubramanian agreed that, in taking this position, he was at variance with the results of tests done on Claimant, and he differed with the reports of all the other doctors, which indicated that Claimant suffered from chronic L5–S1 radiculopathy.

At a November 18, 2002, hearing, Claimant testified on his own behalf, describing his work injury, his subsequent treatment and his continuing symptoms. Claimant stated that, as a store manager, he often had to lift heavy cases of liquor weighing as much as fifty pounds. Claimant recalled that, on December 2, 1992, he was helping to unload a shipment of cases, and he had the sensation of a rubber band stretching in his back. When he lifted the last case, he felt a pop which went from his lower back straight up to the back of his head, and he fell over; the next thing he

1. Dr. Balasubramanian stated that Claimant had normal alignment of his back and was able to heel and toe walk, but he could not hop or squat due to pain in his hips. Dr. Balasubramanian also reported that there was no tenderness in Claimant's lower back, buttocks, paraspinal muscles, sacrum or sacroiliac joints. In addition, he stated that: Claimant's lumbar flexion was normal; examination of Claimant's knees and ankles was normal; straight leg raising when sitting was negative; and there was no evidence of nerve root involvement. Dr. Balasubramanian testified that Claimant's back strength was normal, and the only limitations on motion were related to his avascular necrosis of the hips, which was unrelated to Claimant's work injury. Dr. Balasubramanian found evidence of stocking type peripheral neuropathy, also unrelated to Claimant's work injury, but no evidence of chronic sciatica or L5–S1 radiculopathy.

knew, he was in the hospital under the care of Dr. Chollak. Claimant testified that he continues to treat with Dr. Chollak and still receives medication for his back pain.

According to Claimant, he has difficulty sleeping because of his back pain, and this causes him problems with fatigue during the daytime. Claimant asserted that the pain limits his ability to get out of bed or do daily activities and that he relies on help from his sister for many routine tasks. Claimant also testified that he could not return to his prior employment because his back pain makes it impossible to bend, lift and carry or spend significant time on his feet, as his pre-injury job requires. Claimant acknowledged having had two surgeries in 1999 as a result of avascular necrosis of the hips, which is not work-related. In addition, Claimant stated that he receives social security disability benefits and state pension benefits. (WCJ Lincicome's Findings of Fact, No. 1.)

Claimant also presented the September 11, 2002, deposition testimony of Dr. Chollak, a board-certified orthopedic surgeon. Dr. Chollak testified that when he saw Claimant on January 8, 1993, Claimant complained of low back pain with pain, numbness and tingling in his right leg. Claimant attributed the pain to his work-related injury of December 2, 1992, denying any prior back or right leg injury. (WCJ Lincicome's Findings of Fact, No. 2a.) Based on the initial examination, Dr. Chollak diagnosed Claimant with lumbosacral strain with right sciatica and probable disc herniation.

Dr. Chollak stated that Claimant underwent several diagnostic tests after that first visit: a CAT scan of Claimant's back, performed on March 23, 1993, which

showed a bulging disc at L4–5 and L5–S1 with foraminal stenosis; an EMG performed on April 19, 1993, which was consistent with the CAT scan and showed L5–S1 radiculopathy, or sciatica, on the right; and a second EMG, performed on August 21, 1995, which showed moderate chronic L5–S1 right radiculopathy that had gotten worse since the prior EMG. Dr. Chollak testified that, despite various forms of treatment over the years, Claimant's back and right leg pain have persisted, as would be expected from his chronic nerve condition. (WCJ Lincicome's Findings of Fact, No. 2b.) Based on his examinations of Claimant, his review of Claimant's tests and records and his consideration of Claimant's medical history, Dr. Chollak opined that Claimant has not recovered from his work-related injury, i.e., the L5–S1 radiculopathy and chronic sciatica described in WCJ Hines' First termination Petition decision. Dr. Chollak further opined that Claimant is not able to return to his pre-injury position. Although acknowledging Claimant's non-work-related hip condition, Dr. Chollak attributed Claimant's continuing disability directly to his work-related back injury. (WCJ Lincicome's Findings of Fact, Nos. 2c-d.)

WCJ Lincicome rejected Claimant's testimony and found Dr. Balasubramanian's testimony more credible and persuasive than that of Dr. Chollak. (WCJ Lincicome's Findings of Fact, Nos. 4–6.) Based on these findings, WCJ Lincicome concluded that Employer met its burden of proving that Claimant was fully recovered from his 1992 work-related injury as of May 14, 2001, and that Employer's contest was reasonable. (WCJ Lincicome's Findings of Fact, Nos. 7–8; WCJ Lincicome's Conclusions of Law, Nos. 2–3.) Claimant appealed to the WCAB, which affirmed, and Claimant now petitions this court for re-

view.[2]

Claimant first argues that the WCAB erred in affirming WCJ Lincicome's decision, which terminated Claimant's benefits based on Dr. Balasubramanian's testimony. Claimant points out that, in the First Termination Petition proceeding, WCJ Hines found that Claimant's work-related injury was "chronic sciatica at the L5–S1 distribution on the right side with disc bulging at L5–S1," and Claimant maintains that the parties now are bound by this finding under the doctrine of collateral estoppel.[3] Claimant reasons that because Dr. Balasubramanian's testimony conflicts with that finding, his opinion that Claimant had fully recovered from his work-related lumbar strain and sprain is not substantial, competent evidence to support WCJ Lincicome's decision. We agree.

To succeed in a termination petition, the employer bears the burden of proving that the claimant's disability has ceased or that any current disability is unrelated to the claimant's work injury. *Jones v. Workers' Compensation Appeal Board (J.C. Penny Co.)*, 747 A.2d 430 (Pa. Cmwlth.), *appeal denied*, 564 Pa. 718, 764 A.2d 1074 (2000). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from his work-related injuries. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 141 Pa.Cmwlth.253, 595 A.2d

697 (1991). Claimant asserts that Dr. Balasubramanian's opinion is incompetent and not legally sufficient to support a termination of benefits because it fails to establish that Claimant had recovered from *all* his work-related injuries.

On the issue of Claimant's recovery, Dr. Balasubramanian provided the following relevant testimony.

Q. And it was your opinion in reading your report that [Claimant] suffered only strains and sprains in December of 1992. Isn't that right?

A. That's correct.

Q. In your opinion, Doctor, he did not suffer anything more than sprains and strains in December of '92. Is that right?

A. That's correct.

Q. *So your opinion is only that he has recovered from strains and sprains that he suffered in December of 1992. Is that true?*

A. *That's correct.*

Q. In rendering that opinion then you've rejected all of the doctors who have testified that [Claimant] suffered from and suffers from disc pathology at the L5–S1 level?

A. I don't know of the depositions that other doctors have given, but there are reports that say he has a chronic L5–S1 radiculopathy.

Q. *But in rendering your report, Doctor, you determined that he suffered*

2. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

3. Collateral estoppel is a legal doctrine intended to preclude the re-litigation of issues of law or fact in a subsequent action. *Yonk-*

*ers v. Donora Borough*, 702 A.2d 618 (Pa. Cmwlth.1997). A decision of a WCJ can have preclusive effect in subsequent workers' compensation proceedings. *Id.* Collateral estoppel applies only when the following factors are demonstrated: (1) the legal or factual issues are identical; (2) they were actually litigated; (3) they were essential to the judgment; and (4) they were material to the adjudication. *Id.*

*only sprains and strains and that he recovered from those. Is that right?*

A. *That's correct.*

Q. *So you are not recovering him from anything other than strains and sprains. Isn't that true?*

A. For the back.

Q. Uh-huh.

A. *That's correct.*

(R.R. at 39a–40a) (emphasis added).

In light of this testimony, Claimant relies on *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Auscker)*, 785 A.2d 1087 (Pa.Cmwlth.2001), in which this court held that the testimony of the employer's medical expert could not support a termination of benefits where the doctor failed to determine whether the claimant had recovered fully from the *accepted work-related injury*, as described in the NCP. Because the employer's expert never acknowledged that the claimant *suffered* from the injury set forth in the NCP, we concluded that it would have been impossible for him to have found that the claimant fully *recovered* from that particular injury. Claimant argues that, like the doctor in *Wagman*, Dr. Balasubramanian failed to opine that Claimant fully recovered from his "chronic sciatica at the L5–S1 distribution on the right side with disc bulging at L5–S1," the work-related injury identified in WCJ Hines' First Termination Petition decision. Following the reasoning in *Wagman*, Claimant contends that such a determination would be impossible because Dr. Balasubramanian did not acknowledge that Claimant ever suffered from that accepted injury.

Employer counters that this case is not akin to *Wagman*, but, instead, is comparable to *To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222 (Pa.Cmwlth.2003). In *To*, we held that the

testimony of the employer's medical expert was sufficient to support a termination of benefits, notwithstanding the doctor's expressed belief that the claimant never sustained the injury acknowledged in the NCP. In reaching this conclusion, we distinguished the facts presented in *Wagman* because, in *To*, the employer's expert specifically opined that the claimant had fully recovered from *any injury he may have sustained* in the course of his employment. Although Dr. Balasubramanian did not offer such testimony, Employer nevertheless contends that, as in *To*, Dr. Balasubramanian's testimony was sufficient to show that Claimant no longer suffered residuals from *any* type of back problem. We disagree.

■ Here, Dr. Balasubramanian indicated that he was aware that Claimant had been diagnosed with work-related chronic sciatica and right-sided L5–S1 radiculopathy, and Dr. Balasubramanian acknowledged the findings on the EMGs. However, in opining that Claimant was recovered from his work-related injury, Dr. Balasubramanian expressly testified that Claimant suffered *only* lumbar strain and sprain as the result of his work injury and that Claimant has recovered *only* from that lumbar strain and sprain. This testimony does not, and cannot, support the conclusion that Claimant fully recovered from his *established* work-related injury. *Wagman.* Therefore, Employer has failed as a matter of law to meet its burden of proof, and we reverse the WCAB's order affirming the grant of Employer's Second Termination Petition.

We also agree with Claimant that the WCAB erred in affirming WCJ Lincicome's determination that Employer presented a reasonable contest. Here, the record simply does not support this conclusion.[4]

Employer was aware that Claimant's injury had been judicially established as "chronic sciatica at the L5–S1 distribution on the right side with disc bulging at L5–S1" in the proceedings on Employer's First Termination Petition. Significantly, Employer does not disagree that collateral estoppel applies here. Because Employer based its Second Termination Petition solely on testimony that failed to acknowledge the established work injury, much less that Claimant had recovered from that injury, and because the only evidence Employer introduced to support its Second Termination Petition was insufficient, as a matter of law, to support an award in Employer's favor, we must conclude that Employer failed to established that its Petition was reasonable. Accordingly, we conclude that Claimant is entitled to an award of attorney's fees, and we remand the case so that the WCJ may make the necessary findings with respect to that award.[5] *See* section 440(b) of the Act, 77 P.S. § 996(b).

### ORDER

AND NOW, this 11th day of January, 2005, the order of the Workers' Compensation Appeal Board, dated March 18, 2004, is hereby reversed, and the case is re-manded for additional findings in accordance with this opinion.

Jurisdiction relinquished.

COHN JUBELIRER, J., dissents and files a separate opinion, in which LEAVITT, J., joins.

### DISSENTING OPINION BY Judge COHN JUBELIRER.

I respectfully dissent. I would hold that Employer's expert provided substantial evidence to meet the burden of proof required to support its petition for termination of Claimant's benefits.

The majority determines that Dr. Balasubramanian's testimony is unable to support the conclusion that Claimant fully recovered from his *established* work-related injury because the doctor "expressly testified that Claimant suffered *only* lumbar strain and sprain as the result of his work injury and that Claimant has recovered *only* from that lumbar strain and sprain." (Majority Op. at 996) (emphasis in original). I believe that by relying on only one particular portion of Dr. Balasubramanian's deposition, (Majority Op. at 995–96) (quoting R.R. at 39a–40a), the majority presents an inaccurate view of his testimony, and misapplies this Court's approach to a substantial evidence analysis.

---

4. Pursuant to section 440(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 996(a), a prevailing claimant is entitled to attorney's fees as a general rule; the denial of an award of attorney's fees is the exception to this rule and applies only where the record establishes that the employer's contest is reasonably based. *Cunningham v. Workmen's Compensation Appeal Board (Franklin Steel Co.)*, 159 Pa. Cmwlth.622, 634 A.2d 267 (1993). The employer bears the burden of presenting sufficient evidence to establish the reasonable basis for the contest. *Id.* Whether a reasonable basis exists for an employer to contest workers' compensation liability is a question of law fully reviewable by this court; thus, we may examine the record to determine whether the evidence presented supports the conclusion. *Striker v. Workmen's Compensation Appeal Board (California University of PA)*, 168 Pa. Cmwlth.298, 650 A.2d 1109 (1994).

5. Because of our disposition on these issues, we need not address Claimant's additional allegations of error.

WCJ Lincicome succinctly summarized the deposition testimony of Dr. Balasubramanian in her findings as follows:

Dr. Balasubramanian opined that he was of the opinion that Claimant had suffered a lumbosacral strain and sprain and he had recovered from that injury. Although WCJ Hines issued a decision with regard to another Termination Petition in this matter on May 4, 1998 wherein he described the injury as including disc bulges at two levels with chronic right-sided radiculopathy, *Dr. Balasubramanian did, indeed, offer an opinion with regard to that particular diagnosis.* Specifically, Dr. Balasubramanian testified that on clinical examination, Claimant had no signs and symptoms of right-sided radiculopathy. In fact, Dr. Balasubramanian reported that Claimant told him that on the date of his examination of May 14, 2001, he had no complaints of right-sided radiculopathy. The only finding Dr. Balasubramanian found on examination was a nonspecific numbness which made no anatomic sense in Claimant's lower right leg. Dr. Balasubramanian specifically testified that Claimant could, indeed, return to work at his pre-injury position based upon his clinical examination.

(WCJ Lincicome's Findings of Fact, No. 5) (emphasis added) (*see also* Dep. of Dr. Balasubramanian at 10, 14–19, 38–39, 42). Clearly, the WCJ found that Employer's expert adequately addressed *all* of Claimant's work-related injuries—as described in the original NCP (lumbar strain and sprain) *and* as judicially determined by WCJ Hines (disc bulges at two levels with chronic right-sided radiculopathy). Furthermore, the facts in this case are distinguishable from *Wagman,* because, here, Dr. Balasubramanian did *not* testify that Claimant never had a work injury. *Compare To v. Workers' Compensation Appeal Bd. (Insaco, Inc.),* 819 A.2d 1222,

1225 (Pa.Cmwlth.2003) (noting that due to claimant's significant symptom magnification, the doctor was attempting to ascertain exactly how claimant suffered an injury in the manner described when the doctor's physical examination did not support claimant's complaints).

Here, WCJ Lincicome found Dr. Balasubramanian's testimony credible and persuasive as to Claimant's work-related injury and recovery, because she evaluated his testimony *as a whole,* and found it to be supported by objective findings. *See, e.g., Farquhar v. Workmen's Compensation Appeal Bd. (Corning Glass Works),* 515 Pa. 315, 528 A.2d 580 (1987) (noting that a medical witness's entire testimony must be reviewed and taken as a whole and a final decision should not rest upon words taken out of context of the entire testimony).

In *Hoffmaster v. Workers' Compensation Appeal Bd.,* our Court described the standard of review for substantial evidence as follows:

Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder. Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party. Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. It is solely for the WCJ, as the factfinder, to assess credibility and

to resolve conflicts in the evidence. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.

*Id.,* 721 A.2d 1152, 1155–1156 (Pa.Cmwlth. 1998) (citations omitted). I believe that Employer's expert provided substantial evidence to meet the burden of proof required to support its petition for termination of Claimant's benefits.

Both WCJ Lincicome and the Board did a thorough job of reviewing the testimony in this case, and we should not disturb their decisions. Therefore, I would affirm the decision of the Board.[1]

Judge LEAVITT joins in this dissenting opinion.

1. Because I would conclude that Employer met its burden of proving that Claimant was fully recovered from his 1992 work-related injury, I would also conclude that Employer's contest was reasonable.