IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robin Troutman,                              :
                Petitioner        :
                                        :
     v.                                       :  No. 331 C.D. 2021
                                          :
Norristown Ford (Workers'                    :
Compensation Appeal Board),                  :
                Respondent        :  Submitted:  June 24, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                          FILED:  September 28, 2022

Robin Troutman (Claimant) petitions this Court for review of the March 3, 2021 order of the Workers' Compensation Appeal Board (Board) affirming a WCJ's decision to deny a petition filed by Claimant to review a Utilization Review (UR) determination, and to grant another such petition filed by Employer, Norristown Ford (Employer).  Claimant argues that the WCJ was barred by the rules of collateral estoppel and issue preclusion from ruling on the UR petitions and, in the alternative, made legal conclusions that were unsupported by substantial evidence. After careful review, we affirm.

## I. Background

Claimant worked for Employer, an automobile dealer, as a mechanic.  While working on January 18, 1996, he sustained injuries to his neck and shoulder. Certified Record (C.R.), Item No. 29, Bureau Documents.  Employer recognized the injury through issuance of a Notice of Compensation Payable (NCP), and began

issuing payments for wage loss and medical expenses pursuant to the Workers' Compensation Act (Act).[1]  *Id.*  In 1998, the parties agreed to amend the injury description to include depression, masticatory pain, and myofascial pain dysfunction.  *Id.*  In 2000, a WCJ further amended the description to include a temporomandibular problem.  *Id.*

## A. Prior Litigation

On August 28, 2008, a WCJ issued a decision on a series of petitions that had been filed by both parties in 2006 and 2007 pertaining to this matter.  *Id.*  They included: a review petition, in which Claimant argued for a further amendment to the injury description to include cervical torticollis; a termination petition, filed by Employer, alleging full recovery as of July 7, 2006; a petition, filed by Claimant, for review of a UR determination that treatment by Dr. Jeffrey Ormsbee, a chiropractor, was not reasonable or necessary from August 24, 2005, onward; a petition, filed by Employer, for review of a UR determination that treatment by Dr. Terry Hurtt, a dentist, was reasonable and necessary from September 2, 2005, onward; and, finally, a penalty petition, in which Claimant alleged violations of the Act by Employer.  *Id.*

In support of his review petition, Claimant presented the expert testimony of Dr. Nicholas Diamond, an osteopath, who opined that Claimant suffered from cervical torticollis.[2]  *Id.*  Dr. Diamond also testified regarding the termination petition.  He opined that Claimant continued to suffer from a variety of ailments related to his 1996 work injury and was unable to perform gainful employment

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] Torticollis is a stiff neck associated with muscle spasm, classically causing lateral flexion contracture of the cervical spine musculature.  It may be congenital or acquired.  The muscles affected are principally those supplied by the spinal accessory nerve.  Taber's Cyclopedic Medical Dictionary, 2117-18 (19th ed. 2001).

2

because of them. *Id.* Dr. Diamond also testified on the reasonableness and necessity of treatment by Drs. Ormsbee and Hurtt. *Id.*

In her decision, the WCJ denied Employer's termination petition and granted Claimant's review petition. *Id.* For both determinations, the WCJ credited Dr. Diamond's testimony over the medical testimony presented by Employer. *Id.* The WCJ denied both petitions for review of the UR determination, finding that treatment by Dr. Hurtt was reasonable and necessary for the period under review, but that treatment by Dr. Ormsbee was not. *Id.* The WCJ also found that Employer had violated the Act, and assessed a 20% penalty. *Id.* Employer appealed to the Board, which remanded the matter to the WCJ to explain her reasoning for denying Claimant's petition for review of the UR determination on Dr. Ormsbee's treatment, as well as the basis for her assessment of the 20% penalty. *Id.*

In an April 1, 2014 remand opinion and order, the WCJ provided her reasoning for these decisions. Employer again appealed to the Board, which affirmed. *Id.* Employer then appealed to this Court. We found no error in the WCJ's conclusions, and affirmed the Board's order. *Troutman v. Workers' Comp. Appeal Bd. (Norristown Ford)* (Pa. Cmwlth., No. 724 C.D. 2014, filed Apr. 10, 2015), slip op. at 10.

### B. The Current Dispute

On January 21, 2015, Employer requested UR of the reasonableness and necessity of certain treatments provided to Claimant by Dr. Diamond from November 24, 2014, onward. C.R., Item No. 31, UR Determination (Diamond). Employer also requested UR of the reasonableness and necessity of all treatment by Dr. John Szostek, a chiropractor. C.R., Item No. 35, UR Determination (Szostek). Dr. Robert Cohen, a consultant who served as the reviewer for Dr. Diamond's

3

treatment, opined that it was reasonable and necessary. UR Determination (Diamond). Dr. Gregg Fisher, a consultant who conducted the review of Dr. Szostek's treatment, concluded that it was *not* reasonable and necessary. UR Determination (Szostek). Employer petitioned a WCJ for review of the UR determination of Dr. Diamond's treatment. C.R., Item No. 2, Employer UR Review Petition. Claimant petitioned for a review of the UR determination of Dr. Szostek's treatment. C.R., Item No. 4, Claimant UR Review Petition.

In support of his petition, Claimant presented records and a written report from Dr. Szostek. C.R., Item No. 39. In response to Employer's petition, Claimant presented records and a written report from Dr. Diamond. C.R., Item No. 38. In support of its own petition regarding Dr. Diamond's treatment, Employer presented the deposition testimony of Dr. Gregory Pharo. C.R., Item No. 45, Pharo Deposition (Dep.), 9/29/15. Dr. Pharo also testified briefly on the reasonableness and necessity of Dr. Szostek's treatment. Pharo Dep., 9/29/15, at 22-23.

### 1. Appeal of the Diamond UR Determination

In his UR determination, Dr. Cohen described Dr. Diamond's treatment of Claimant as percutaneous electric nerve stimulation (PENS) and trigger point injections to the right cervical area and the trapezius. UR Determination (Diamond). Dr. Cohen concluded that both treatments were reasonable and necessary. *Id.* In forming his conclusion, Dr. Cohen did not examine any of Dr. Diamond's medical records, but learned of his treatment through other providers' records, a seven-minute telephone conversation with Dr. Diamond, and a written, personal statement by Claimant. *Id.* Dr. Diamond explained that Claimant had developed a "chronic pain syndrome," from which the PENS and trigger point injections provided "some relief." *Id.* Claimant himself affirmed that the treatments were "very beneficial" as

4

they reduced muscle tightness, pain, and aided mobility. *Id.* Dr. Cohen opined that the treatment allowed Claimant "to perform his activities of daily living." *Id.*

Dr. Pharo testified regarding an independent medical examination (IME) of Claimant, which he performed on October 20, 2014. Pharo Dep., 9/29/15 at 10. Dr. Pharo began with an interview of Claimant, who explained that he worked for Employer as a mechanic. *Id.* at 11. On the day of his injury, Claimant was tightening a bolt when he felt a sudden pop and pain in his right shoulder. *Id.* Claimant reported that he had felt consistent pain since then, for which he has received "extensive therapy injections." *Id.* He reported a current pain level of 8 on a 10-point scale. *Id.* His symptoms included pain in his upper back, which radiated into his shoulder region, and numbness and tingling in his palms. *Id.* The pain increased with extension of the neck or prolonged positioning, and decreased with injections or physical therapy. *Id.*

Dr. Pharo described Claimant's treatment regime as "quite complex." *Id.* at 13. On Mondays, Claimant typically saw Dr. Whalen, a rheumatologist, who performed regular, pain-relieving injections into Claimant's trapezius. *Id.* at 13-14. On Tuesdays, Dr. Diamond performed similar injections into the neck and shoulder. *Id.* In addition, Claimant received injections from Dr. Sofia Lam, a pain management specialist, every four to six weeks; and from Dr. Hurtt, his dentist, at unspecified intervals. *Id.* The pain relief from Drs. Whalen's and Diamond's injections lasted "approximately a day"; from Dr. Hurtt's injections, "a little bit longer"; and from Dr. Lam's injections, "about a week." *Id.*

After further review of the medical records and his own examination of Claimant's physical condition, Dr. Pharo concluded that Dr. Diamond's treatment was not reasonable or necessary as of November 21, 2014. *Id.* at 28. He explained

that, in his view, the treatment of Claimant was marked by "redundancy": "when you're injecting into the neck and the cervical [spine] and the trapezius, there's no reason for everybody to be doing it." *Id.* at 20. Dr. Pharo noted that Dr. Diamond was not even prescribing medications, but rather only administered "injections in the cervical/scapular region," and was therefore not performing any treatment that was not "already being done by other people." *Id.* at 19. He further explained that the American Society of Interventional Pain Physicians guidelines recommend that "ongoing trigger point injections into chronic areas" only be done "once every three months," "that you should have a [50%] reduction, and the reduction should last six weeks." *Id.* at 20-21. The effects of the injections that Dr. Diamond was administering "last[ed] a day," and were therefore unnecessary. *Id.* at 21.

In response to Dr. Pharo's testimony, Dr. Diamond submitted a letter in which he maintained that his treatment of Claimant is reasonable and necessary. C.R., Item No. 38, Records of Dr. Diamond. In response to Dr. Pharo's remark that his contribution to Claimant's treatment is redundant, Dr. Diamond explained that he has served as an "overall manager" of Claimant's treatment over the years, thereby referring him to "the vast majority" of the specialists and diagnosticians who have seen him since his work injury. *Id.* Dr. Diamond concluded with the observation that he has acted as a UR consultant on numerous occasions, and that Dr. Pharo's opinions failed to meet "the standards of a typical [UR]" process. *Id.*

### 2. Review of the Szostek UR Determination

Dr. Fisher conducted the UR of Dr. Szostek's treatment of Claimant. C.R., Item No. 3, Szostek UR Determination. In a March 5, 2015 letter, Dr. Fisher noted that Dr. Szostek failed to provide medical records, and never requested a telephone discussion. *Id.* Dr. Fisher did receive a personal statement from Claimant, which

6

described the treatments he was receiving from Dr. Szostek; those included spinal manipulation and therapeutic exercises. *Id.* In the absence of records from or communication with Dr. Szostek, Dr. Fisher asserted that a UR determination could be made based on Claimant's statement, and opined that it was not reasonable or necessary.[3] *Id.*

In response to Dr. Fisher's report and Dr. Pharo's testimony, Claimant offered his own affidavit describing the benefits of the treatment he received from Dr. Szostek. C.R., Item No. 36. Claimant also offered treatment records from Dr. Szostek and a letter from Dr. Szostek himself, in which he blamed a combination of professional and personal issues for his failure to submit records.[4]

### 3. The WCJ's Decision

The WCJ found that Employer met its burden of proof that treatments by both Drs. Diamond and Szostek were not reasonable and necessary.[5] C.R., Item No. 9,

---

[3] As noted above, Dr. Pharo also briefly testified that Dr. Szostek's treatment was not reasonable or necessary. Pharo Dep., 9/29/15, at 22-23. Dr. Pharo also affirmed that he agreed with Dr. Fisher's UR determination. *Id.* at 30. Dr. Pharo noted that, in forming his opinion, he had reviewed Dr. Szostek's treatment records from April 22 to December 13, 2013. *Id*. at 38.

[4] Dr. Szostek explained that when he received notice that Employer had sought UR of his treatment in late January 2015, a combination of "mechanical issues" with his office's copier and his father-in-law's death created a work backlog. C.R., Item No. 39. Then, on February 4, 2015, his office was "involved in a large fire," rendering the requested records inaccessible for several weeks. *Id.*

[5] In addition to the two petitions for review of UR determinations, two other petitions were also before the WCJ, both filed by Claimant. One sought review of a UR determination that treatment by Sofia Lam, M.D. was not reasonable and necessary. The WCJ denied the petition, but because Claimant did not appeal that part of the decision, it has been omitted from further discussion.

The other petition sought penalties from Employer, alleging that it had violated the Act by failing to pay for reasonable and necessary treatment by the Medical Rehabilitation Center of Pennsylvania (MRCP) "and other medical providers." C.R., Item No. 6. In denying the petition, **(Footnote continued on next page…)**

7

July 18, 2016 Decision and Order of the WCJ (WCJ Decision), Conclusion of Law (C.L.) Nos. 3, 4. Regarding the petition to review the UR determination of Dr. Diamond's treatment, the WCJ explained that Dr. Pharo, unlike Dr. Cohen, performed a physical examination of Claimant. *Id.*, Finding of Fact (F.F.) No. 13. The WCJ also accepted Dr. Pharo's testimony that the injections performed by Dr. Diamond were made redundant by those already administered by others. *Id.* Furthermore, the WCJ noted that Dr. Cohen did not elaborate on how Dr. Diamond's treatment was beneficial to Claimant, or how it was not made redundant by the treatment administered by others. *Id.* Regarding the petition to review the UR determination of Dr. Szostek's treatment, the WCJ accepted Dr. Fisher's testimony that he could not assess whether the treatments were reasonable or necessary in the absence of any records from Dr. Szostek's office. *Id.*, F.F. No. 12. The WCJ also observed that Dr. Fisher's conclusion was corroborated by Dr. Pharo, who examined Claimant on October 20, 2014, a date which the WCJ deemed "in close proximity" to Dr. Fisher's March 5, 2015 determination. *Id.*

Claimant appealed to the Board, which remanded on grounds not related to the instant appeal.[6] C.R., Item No. 12, June 30, 2017 Opinion and Order of the Board

---

the WCJ explained that a prior UR determination had concluded that Claimant's physical therapy was not reasonable and necessary from July 12, 2011, onward. WCJ Decision, F.F. No. 15. The WCJ accepted that reviewer's opinion as part of a prior decision, issued on April 5, 2013. *Id.*

[6] The Board directed the WCJ to reconsider her denial of Claimant's penalty petition (briefly summarized in the previous footnote). It noted that in her previous decision, the WCJ had only determined that treatment by Ryan Mark, a physical therapist employed by the MRCP, was not reasonable and necessary. 2017 Board Op. at 8. The Board explained that "when [a] UR request or determination specifically states a certain physical therapist to be reviewed, that UR determination only applies to that therapist and does not apply to any other therapists in that facility." *Id.* (citing *MV Transp. v. Workers' Comp. Appeal Bd. (Harrington)*, 990 A.2d 118 (Pa. Cmwlth. 2010)). The Board therefore remanded with instructions to determine if the prior UR **(Footnote continued on next page…)**

(2017 Board Op.) at 10. The WCJ issued a remand decision on April 30, 2018. C.R., Item No. 14. Claimant again appealed to the Board, which again remanded on grounds not related to the instant appeal.[7] C.R., Item No. 17. The WCJ issued another remand decision on June 23, 2020.[8] C.R., Item No. 19. Claimant appealed again to the Board, which affirmed. C.R., Item No. 23. This appeal followed.[9]

## II. Issues

On appeal, Claimant argues that the WCJ was precluded by *res judicata* and collateral estoppel from making determinations of the reasonableness and necessity of Dr. Diamond's treatment, because of Dr. Diamond's appearance as an expert witness for the WCJ's 2008 decision. Alternatively, Claimant argues that the WCJ's acceptance of Dr. Pharo's testimony over Dr. Cohen's and Dr. Diamond's was unsupported by substantial evidence. Claimant also argues that her acceptance of Dr. Fisher's and Dr. Pharo's testimony over Dr. Szostek's testimony, and Claimant's own affidavit, was similarly unsupported by substantial evidence.

---

request and determination (which were not reproduced of the record before the Board) applied solely to treatment by Mr. Mark, or to treatment by all MRCP therapists. 2017 Board Op. at 10.

[7] In her remand decision, the WCJ found that the adverse UR determination on the reasonableness and necessity of Mr. Mark's treatment applied to "all physical therapists." C.R., Item No. 14. The Board, however, held that the WCJ capriciously disregarded evidence that the UR determination applied, in fact, to treatment by Mr. Mark only. It therefore reversed and remanded again to the WCJ, with instructions to reconsider the denial of Claimant's penalty petition.

[8] On remand, the WCJ explained that in refusing to pay for Claimant's physical therapy at the MRCP, Employer had relied on her own previous determinations. C.R., Item No. 19. The WCJ therefore found that Employer had not violated the Act, and denied the penalty petition. *Id.*

[9] Our scope of review in a workers' compensation proceeding is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether the findings of fact are supported by substantial evidence. *Gumro v. Workmen's Comp. Appeal Bd. (Emerald Mines Corp.)*, 626 A.2d 94, 97 (Pa. 1993).

9

### III. Discussion

### A. Collateral Estoppel and *Res Judicata*

Collateral estoppel is a legal doctrine intended to preclude the re-litigation of issues of law or fact in a subsequent action. *Gillyard v. Workers' Comp. Appeal Bd. (Pa. Liquor Control Bd.)*, 865 A.2d 991, 995 n.3 (Pa. Cmwlth. 2005). A WCJ's decision can have preclusive effect in subsequent workers' compensation proceedings. *Id.* Collateral estoppel applies only when the following factors are demonstrated: (1) the legal or factual issues are identical; (2) they were actually litigated; (3) they were essential to the judgment; and (4) they were material to the adjudication. *Id.* The related, but distinct principle of *res judicata* prevents a future suit between the same parties on the same cause of action after a final judgment is entered on the merits. *Temple Univ. v. Workers' Comp. Appeal Bd. (Parson)*, 753 A.2d 289, 291 (Pa. Cmwlth.), *appeal denied*, 764 A.2d 1075 (Pa. 2000). Unlike collateral estoppel, *res judicata* applies not just to matters actually litigated but to those that should have been litigated in the prior proceeding. *Id.*

It is well settled that an issue is waived unless it is preserved at every stage of the proceeding. *Wheeler v. Workers' Comp. Appeal Bd. (Reading Hosp. & Med. Ctr.)*, 829 A.2d 730, 735 (Pa. Cmwlth. 2003). Legal issues and facts not presented to the factfinder cannot be asserted on appeal without sacrificing the integrity, efficiency, and orderly administration of the workers' compensation scheme of redress for work-related injury and occupational disease. *DeMarco v. Jones & Laughlin Steel Corp.*, 522 A.2d 26, 29 (Pa. 1987).

Instantly, Claimant argues that Employer was barred by both collateral estoppel and *res judicata* from disputing the reasonableness and necessity of Dr. Diamond's treatment, and that the WCJ therefore committed legal error by granting

Employer's petition to review the UR determination. Claimant explains that, in her August 27, 2008 decision, the WCJ accepted Dr. Diamond's testimony "that [Claimant] was not recovered from the work injury and that Dr. Diamond's medical treatment of [Claimant] was reasonable and necessary." Claimant's Brief (Br.) at 30. In her December 20, 2010 decision, the WCJ also found that Dr. Diamond "had the opportunity to examine [Claimant] for several years and was in the best position to assess [his] response to medical treatment received for the work injury." *Id.* Because of the allegedly preclusive effect of those previous determinations, along with the absence of record evidence of a change in circumstances, Claimant argues that the WCJ committed legal error in granting the petition.

We reject Claimant's argument, as he is raising this issue for the first time in his appeal to this Court. In *DeMarco*, 522 A.2d at 27-28, an employer first asserted its *res judicata* defense in an appeal from a referee's[10] decision; the Board considered, though ultimately rejected, the defense on its merits. Our Supreme Court held that the Board erred as a matter of law in even considering the defense, as it had been waived. *Id.* at 29. In the instant matter, Claimant's most recent appeal to the Board, filed on July 9, 2020, makes no mention of *res judicata* or collateral estoppel. C.R., Item No. 21. Indeed, Claimant asserts the defenses for the first time in his brief to this Court. We therefore decline to consider his argument on its merits.[11]

---

[10] WCJs were referred to at the time as referees under the Act. *See* Section 401 of the Act, amended by the Act of July 2, 1993, P.L. 190, 77 P.S. § 701.

[11] We briefly note that Claimant's argument would be lacking in merit even if the issue had been timely raised. In her August 27, 2008 and December 20, 2010 decisions, the WCJ accepted Dr. Diamond's testimony on the following issues: the extent of Claimant's recovery, whether to amend the injury description, and the reasonableness and necessity of treatment by two other **(Footnote continued on next page…)**

11

**B. Claimant's Evidentiary Challenges**

The UR process is the exclusive way to challenge medical bills under the Act. *Cnty. of Allegheny v. Workers' Comp. Appeal Bd. (Geisler)*, 875 A.2d 1222, 1226 (Pa. Cmwlth. 2005). Neither a WCJ nor the Board has jurisdiction to determine the reasonableness of medical treatment unless and until a report is issued and the UR organization (URO) issues a determination. *Id.* A health care provider, employer, or employee who disagrees with the URO's determination may, within 30 days, seek review of the determination by a WCJ. *Id.* at 1227 (citing Section 306(f.1)(6)(iv) of the Act, 77 P.S. § 531(6)(iv)). The employer carries the burden throughout the UR process of proving that the challenged medical treatment is unreasonable or unnecessary. *Topps Chewing Gum v. Workers' Comp. Appeal Bd. (Wickizer)*, 710 A.2d 1256, 1261 (Pa. Cmwlth. 1998).

Instantly, Employer sought review by the WCJ of a UR determination that treatment by Dr. Diamond was reasonable and necessary. Claimant sought review of a UR determination that treatment by Dr. Szostek was not reasonable and necessary. The WCJ granted Employer's petition and denied Claimant's, finding that PENS and trigger point injections by Dr. Diamond, and all treatment by Dr. Szostek, was not reasonable and necessary. On appeal, Claimant makes a variety of evidentiary objections to the WCJ's decision, as follows.

**1. Palliative Treatment and the UR Determinations**

Claimant argues that the WCJ erred as a matter of law in finding Dr. Diamond's treatments were not reasonable or necessary, when evidence suggested that they had a pain-relieving effect. In support, he cites a line of cases, beginning

---

doctors. C.R., Item No. 29, Bureau Documents. No UR determination of Dr. Diamond's own treatment was at issue. The claims and issues in those previous adjudications are therefore not identical to those in the instant matter.

12

with *Glick v. Workers' Compensation Appeal Board (Concord Beverage Co.)*, 750 A.2d 919, 921-922 (Pa. Cmwlth. 2000), in which this Court has held that a treatment's palliative effect may render it reasonable and necessary, even if it does not cure the underlying ailment. Claimant also maintains that the WCJ's finding of Employer's medical witnesses as more credible than his own medical witnesses was legally erroneous, and offers several reasons why he believes that determination should be reversed.

We first observe that although *Glick* instructs a WCJ to consider a treatment's palliative effect as a factor, it does not stand for the proposition that *any* palliative effect requires the WCJ to find the treatment reasonable and necessary. In the instant matter, the WCJ acknowledged that the treatments by Dr. Diamond had a palliative effect, noting, for example, that the pain relief from Dr. Diamond's injections "lasted approximately a day." WCJ Decision, F.F. No. 13. As Dr. Pharo explained, however, Claimant was "receiving the same or similar treatment by other doctors," rendering the injections administered by Dr. Diamond redundant. Pharo Dep., 9/29/15 at 18. Furthermore, Dr. Pharo opined that the ephemeral pain-relieving effect of those injections did not justify their continued use under current professional guidelines. *Id.* at 20-21. The WCJ therefore acted within her discretion in concluding that the treatment was not reasonable and necessary.

## 2. Determinations of the Medical Witnesses' Credibility

Next, Claimant argues that Employer's medical witnesses could not have been accepted over Claimant's without legal error. As it pertains to Dr. Diamond's treatment, Claimant asserts that Dr. Pharo had failed to review Dr. Cohen's UR determination or Dr. Diamond's treatment records. Claimant also argues that Dr. Diamond had been treating Claimant since 1997, while Dr. Pharo conducted a single

13

examination of him. Claimant next alleges that the acceptance of Dr. Pharo's opinions over Dr. Cohen's was erroneous because Dr. Pharo does not perform URs in workers' compensation cases, and that Dr. Cohen, as an independent reviewer, is "in a better position to give a more objective opinion." Claimant's Br. at 35.

Regarding Dr. Szostek's treatment, Claimant argues that UR consultant Dr. Fisher's adverse UR determination is not credible because it is based on Dr. Szostek's failure to submit records due to factors outside his control. Without citing legal authority, Claimant maintains that the WCJ's decision should be therefore reversed "in the interest of justice." Claimant's Br. at 39. Claimant further argues that Dr. Szostek's records, which were presented as evidence in support of his petition to review the adverse UR determination, show that the treatment is reasonable and necessary. Claimant also maintains that Dr. Pharo was not credible to testify regarding Dr. Szostek's treatment because he is not a chiropractor, he did not review Dr. Szostek's records from the period under review, and he only examined Claimant once, as opposed to Dr. Szostek's greater experience in treating him.

With these arguments, Claimant is essentially asking this Court to reweigh the credibility of the witnesses. However, it is black letter law that the WCJ is the ultimate factfinder and, in performing that function, is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Milner v. Workers' Comp. Appeal Bd. (Main Line Endoscopy Ctr.)*, 995 A.2d 492, 496 (Pa. Cmwlth. 2010). It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ. The pertinent inquiry is whether there is any evidence to support the findings actually made. *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

14

Furthermore, a WCJ's credibility determinations are due substantial deference. They may only be overturned if they are "arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render [them] irrational." *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

In granting Employer's petition to review the UR determination that Dr. Diamond's treatment was reasonable and necessary, the WCJ noted that Dr. Cohen never examined Claimant and did not review Dr. Diamond's treatment records. WCJ Decision, F.F. No. 13; C.R., Item No. 31, UR Determination (Diamond). Dr. Pharo also explained, and the WCJ accepted, that the duration of the treatments' effect did not justify their continued use under current professional standards. Pharo Dep., 9/29/15 at 25. In response, Dr. Diamond never gave an account of why the specific treatments under review were reasonable and necessary, focusing instead on the importance of his care of Claimant in general. C.R., Item No. 38, Records of Dr. Diamond.

In denying Claimant's petition to review the UR determination that Dr. Szostek's treatment was not reasonable and necessary, the WCJ explained that Dr. Fisher was capable of forming his opinion without the treatment records that Dr. Szostek had failed to provide.[12] WCJ Decision, F.F. No. 12; C.R., Item No. 35, UR

---

[12] It should be noted that the WCJ was free to accept a UR determination made in the absence of Dr. Szostek's records. Indeed, this Court has held that a UR reviewer is not required to review the entire medical file or speak with the provider under review. *Solomon v. Workers' Comp. Appeal Bd. (City of Phila.)*, 821 A.2d 215, 220 (Pa. Cmwlth. 2003). In *Solomon*, a UR reviewer had not obtained records from a claimant's previous providers before forming an opinion on reasonableness or necessity of continued psychological treatment; the claimant argued that the omission rendered the reviewer's opinion incompetent. *Id.* at 218-19. We noted that "the breadth of information reviewed is a factor which the fact[]finder may consider, but it is no more conclusive than any other single factor" used by the WCJ to evaluate an expert's credibility. *Id.*
**(Footnote continued on next page…)**

Determination (Szostek). As the WCJ also noted, Dr. Pharo did review treatment records from Dr. Szostek, and came to the same conclusion as Dr. Fisher. F.F. No. 12; Pharo Dep., 9/29/15 at 22, 30.

Based on the foregoing, we do not agree that the finding of Employer's medical experts as more credible was legally erroneous. Claimant cites no legal authority to establish why any of his critiques are grounds for overturning the WCJ's credibility determinations. Rather, he has simply provided us with a list of reasons why he believes contrary determinations may be supported, which betrays a misunderstanding of this Court's appellate function. We give substantial deference to a WCJ's credibility determinations, only overturning them where arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational. *Casne*, 962 A.2d at 19. Since Claimant offers no legitimate basis for overturning those determinations, we decline to do so.

## IV. Conclusion

The WCJ, as the factfinder, is solely responsible to assess credibility and resolve conflicts in the evidence. Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations.

We do not disturb the WCJ's determinations in this matter, which are supported by substantial evidence. Additionally, Claimant's objection on *res judicata* and collateral estoppel grounds to the finding that Dr. Diamond's treatment

---

at 220. Because the UR reviewer "did not indicate that he could not render an opinion due to the lack of medical records," the WCJ acted within his discretion in accepting the reviewer's opinions. *Id.*

was not reasonable or necessary is due no consideration, as that objection has been waived. Accordingly, we affirm the Board.

_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robin Troutman,                   :
          Petitioner        :
                           :
      v.               :  No. 331 C.D. 2021
                           :
Norristown Ford (Workers'    :
Compensation Appeal Board),  :
          Respondent    :

## O R D E R

AND NOW, this 28th day of September, 2022, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated March 3, 2021, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge